UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRIS ANN JAYE | |
| Plaintiff, | Civil Action No. 14-7471 (JAP) |
| v. | **OPINION** |
| NJ ATTORNEY GENERAL JOHN HOFFMAN, et al. | |
| Defendant. | |

PISANO, District Judge.

    Plaintiff Chris Ann Jaye ("Plaintiff"), proceeding *pro se*, brings this action against the New Jersey Attorney General, a deputy attorney general, several members of the New Jersey judiciary, and state court personnel. While her complaint purports to challenge the constitutionality of certain sections of the New Jersey Condominium Act, the facts pled as well as the counts in the complaint appear to relate solely to occurrences in the course of state court lawsuits in which Plaintiff was a litigant and in which she alleges the courts wrongfully ruled against her. These lawsuits included an action by Plaintiff against her condominium association in which she alleged improper conduct on the part of the association and its counsel, as well as an action by the condominium association against Plaintiff for unpaid common charges.

    Presently before the Court are two motions by Plaintiff in which she seeks temporary, preliminary and permanent injunctive relief, as well as certain declaratory

relief relating to pending and concluded state court actions.  Also pending is a motion by Defendants to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and (6).  The motion to dismiss has not been fully briefed.  However, in light of the emergent nature of Plaintiff's motions and the urgency with which she seeks relief,[1] the Court decides Plaintiff's motions.

## I.  BACKGROUND

As set forth in the allegations in the complaint, Plaintiff is the owner of a condominium unit in Oak Knoll Village ("OKV") in Annandale, New Jersey.  As best as the Court can discern from the lengthy complaint, there have been a number of lawsuits in New Jersey state court involving Plaintiff and the OKV Condominium Association.  One suit was brought by Plaintiff against OKV and appears to involve damage that occurred to Plaintiff's unit as well as alleged misconduct by the condominium association and its counsel.  Another suit was brought by OKV against Plaintiff and sought to recover allegedly unpaid common fees.

A recent New Jersey Appellate Division decision provides some insight with regard to the background of this case.  In affirming certain judgments against Plaintiff, the New Jersey Appellate Division stated that:

> [Jaye] is, and at all relevant times was, a unit owner at Oak Knoll Village, a condominium community.  [Jaye] failed to pay her common element expenses.  As a result of the delinquency in those expenses, OKV instituted legal action seeking a judgment against appellant for the outstanding amount.  Prior to the entry of judgment, a settlement was reached between the parties whereby in exchange for a "zero-out" of the claimed balance owed by appellant to OKV, [Jaye] would commence

---

[1] On February 9, 2015, Plaintiff advised Court personnel by phone that the relief she was seeking was urgent and could not wait until the return date of the pending motion to dismiss.

> payment of the common element charges. Notwithstanding the agreement, [Jaye] ceased payments after a few months. Thereafter, OKV instituted another action by way of counterclaim seeking judgment for unpaid common element expenses and counsel fees. OKV filed a motion for summary judgment which appellant opposed on grounds other than OKV's entitlement to the outstanding fees and costs. The judge, after providing [Jaye] with the opportunity to contest the quantum of fees and costs sought by OKV, granted the motion.

*Jaye v. Oak Knoll Village Condominium Owners Ass'n*, 2014 WL 7691938 (N.J. Super. App. Div. January 28, 2015). The Appellate Division further noted that Plaintiff had earlier "instituted a lawsuit seeking damages as a result of the alleged improper conduct of OKV, two of its members and OKV's outside law firm" and those claims were dismissed on July 28, 2013 in an order that was not appealed. *Id.* at *1, n.1.

Plaintiff brings the instant complaint pursuant to 28 U.S.C. § 1983 and the New Jersey Civil Rights Act, 10:6-1, *et seq*. In Counts One and Two, she alleges that all defendants, including the New Jersey Attorney General, several members of the state judiciary, and state court personnel deprived her of her numerous constitutional rights during the course of the abovementioned litigations, including her rights under the Fifth, Fourteenth ("including but not limited to Due Process Clause and Equal Protection Clause") and First Amendments. In Count Three she similarly alleges violation of her rights under the New Jersey Constitution. By way of relief, in addition to a general request for damages, Plaintiff requests that this Court (1) reopen the New Jersey case bearing the docket number MER-L-2733-13 and "restore" the statute of limitations; (2) stay pending state court litigation; (3) enjoin any state actor from arresting Plaintiff for non-compliance with state court orders.

By way of her first motion, Plaintiff asks the Court (1) to intervene in a matter pending in state court and declare that the relief being sought against plaintiff in that

3

action is not valid; (2) to order that the state court report to the appropriate agencies certain parties to the state court action "as criminal;" and (3) to declare that the New Jersey courts cannot be impartial to plaintiff.  In the second motion, Plaintiff seeks temporary, preliminary and permanent injunctive relief (1) staying all of her state court proceedings while this federal action is pending; (2) removing certain liens placed on her property; and (3) enjoining defendants from destroying evidence in their personal possession.

## II. ANALYSIS

At the outset, the Court notes that federal courts have an independent obligation to examine their own jurisdiction over a matter.  *See Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002).  Undertaking such an examination, the Court finds that it lacks jurisdiction over Plaintiff's claims in this action under the *Rooker-Feldman* doctrine. This doctrine, derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), recognizes that district courts lack subject matter jurisdiction over cases that are, in substance, appeals from state court judgments.  Only the United States Supreme Court has such jurisdiction. 28 U.S.C. § 1257.

> The doctrine has been described by the Third Circuit as follows:
>
> The *Rooker-Feldman* doctrine arises from 28 U.S.C. § 1257 which states in relevant part that "final judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court." Since Congress has never conferred a similar power of review of the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions.                ...
>
> The *Rooker-Feldman* doctrine prohibits District Courts from adjudicating actions in which the relief requested requires determining whether the

4

> state court's decision is wrong or voiding the state court's ruling. Although § 1257 refers to orders and decrees of the highest state court, the *Rooker-Feldman* doctrine has been applied to final decisions of lower state courts.

*In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005) (quoting *Walker v. Horn*, 385 F.3d 321, 329 (3d Cir. 2004).

The Supreme Court has instructed that the *Rooker-Feldman* doctrine is limited to those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521-22, 161 L.Ed.2d 454 (2005).  The *Rooker-Feldman* precludes a district court from overturning a state-court judgment.  544 U.S. at 293, 125 S.Ct. at 1527.  The doctrine applies when (1) the federal plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state-court judgments, (3) those judgments were rendered before the federal suit was filed, and (4) the plaintiff is inviting the district court to review and reject the state-court judgments. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

Reviewing the above-listed factors, the Court finds that the *Rooker-Feldman* doctrine applies here.  Plaintiff was a litigant in state court.  She lost.  She now has come to federal court complaining of injuries as a result of the various decisions in state court.  In substance, she has asked this Court to review those decisions.  This Court lacks jurisdiction to do so.

Additionally, the Court finds that, in any event, it would be appropriate to abstain from exercising jurisdiction over Plaintiff's claims.  Federal district courts have "discretion to abstain from exercising jurisdiction over a particular claim where

5

resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005).  Here, the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny -- known as " *Younger* abstention"-- requires the Court to abstain from exercising jurisdiction in this case.  The *Younger* abstention doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).  As the Third Circuit has noted, "*Younger* abstention arose primarily from 'the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.' " *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195 (1992) (quoting *Younger* 401 U.S. at 44).

      The Younger abstention is triggered by only three categories of state court proceedings: (1) state criminal prosecutions; (2) "civil enforcement proceedings," and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Communications, Inc. v. Jacobs*, -- U.S. -- , 134 S.Ct. 584, 591, 187 L.Ed.2d 505 (2013) (internal citations omitted).  Here, the underlying civil proceedings implicate New Jersey's interest in enforcing the orders and judgments of its Court.  Indeed, Plaintiff asks this Court, in effect, to prevent New Jersey courts from enforcing their orders and judgment.  As such, the Court must abstain.

Consequently, the Court denies Plaintiff's motions. Defendants' pending motion to dismiss is dismissed as moot. Because the Court lacks subject matter jurisdiction, Plaintiff's complaint is dismissed.

### III.  CONCLUSION

For the reasons above, Plaintiff's motions for injunctive and declaratory relief are denied, and the complaint is dismissed. Defendants' motion to dismiss is dismissed as moot. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
Joel A. Pisano, U.S.D.J.

February 10, 2015